Nicholas **GOEDERT**,
Appellant (Plaintiff),

v.

**NEWCASTLE EQUIPMENT COMPANY, INC.**, Appellee
(Defendant).

No. 89–68.

Supreme Court of Wyoming.

Dec. 5, 1990.

Glenn E. Smith of Glenn E. Smith & Associates, Cheyenne, and Jon J. LaFleur of LaFleur, LaFleur & LaFleur, Rapid City, S.D., for appellant; argument by Mr. La-Fleur.

Stanley S. Sheehan, Gillette, for appellee; argument by Stanley S. Sheehan.

Before CARDINE, C.J.[*], and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Justice.

Appellant Nicholas Goedert, the driver of a truck involved in a one-vehicle accident, sued Newcastle Equipment Company, Inc. alleging negligence in repair of the truck brakes. Trial was to a jury. At the close of plaintiff's case, the trial court directed a verdict for defendant Newcastle. Goedert appeals, presenting a number of issues for review.

We reverse.

[*] Chief Justice at time of oral argument.

Because our reversal rests upon an incorrect denial of benefit of the doctrine of res ipsa loquitur and, therefore, an improperly granted directed verdict, we do not consider the other issues raised by Goedert.

When reviewing the propriety of a directed verdict, we apply the same standard as the trial court, giving no deference to that court's decision. *Carey v. Jackson*, 603 P.2d 868, 877 (Wyo.1979). We consider all of the evidence favorable to the non-moving party and all reasonable inferences that may be drawn from that evidence. *Sims v. General Motors Corp.*, 751 P.2d 357, 361 (Wyo.1988). We do not weigh the evidence or consider the credibility of witnesses. 751 P.2d at 361. The directed verdict will be sustained if the evidence and inferences drawn therefrom inescapably lead reasonable men to conclude that the verdict must be against the non-moving party. 751 P.2d at 361.

*Evidence Favoring Goedert*

Goedert experienced problems with the brakes on the truck unit of a tractor-trailer rig. The truck was taken to Newcastle Equipment Company for repair of the brakes. One of Newcastle's employees worked on the brakes. Goedert picked up the truck at defendant's repair shop and drove it to a location where the trailer was loaded with wood. The first time he started to descend a grade with the loaded truck, he attempted to actuate the brakes, but the truck did not slow down. He steered into an embankment to stop the truck from being a runaway and suffered injury as a result.

Goedert contends that defendant was negligent in repairing the brakes and that the failure of the brakes caused this accident and his injuries. To establish a negligence claim, a plaintiff must show that defendant had a duty to the plaintiff, defendant breached his duty, and the breach of duty proximately caused injury to plaintiff. *Pickle v. Board of County Comm'rs*, 764 P.2d 262, 264 (Wyo.1988). Therefore, Goedert must establish that Newcastle had a duty to repair the brakes to operate properly, that Newcastle failed, that Newcastle

breached its duty of repair resulting in the brakes not operating properly and causing the accident and injury suffered by appellant.

The evidence established that Goedert was injured as a result of the truck's brake failure. The trial court directed a verdict against Goedert because there was no direct evidence of the cause of the brake failure or direct evidence of negligence on the part of defendant. Goedert attempted to compensate for this lack of direct evidence by invoking the doctrine of res ipsa loquitur. If applicable, res ipsa loquitur would allow Goedert to substitute an inference that defendant was negligent for direct evidence of negligence. This permissive inference is not binding on the jury but is sufficient to prevent a directed verdict against a plaintiff. The trial court ruled that res ipsa loquitur was not applicable because Newcastle did not have "exclusive control" of the truck brakes at the time of the failure.

■■■ The doctrine of res ipsa loquitur is a recognition that in some cases it is reasonable to infer negligence from circumstantial evidence. *Sweeney v. Erving*, 228 U.S. 233, 238, 33 S.Ct. 416, 417–18, 57 L.Ed. 815 (1913). The Latin label of "res ipsa loquitur," meaning "the thing itself speaks," is attributed to a comment made by Chief Baron Pollock in *Byrne v. Boadle*, 2 H. & C. 722, 159 Eng.Rep. 299 (1863). In that case, a barrel of flour fell from defendant's window and struck plaintiff causing injury. Plaintiff sued but was unable to present any affirmative evidence of negligent acts by defendant. Defendant argued that negligence can never be presumed from the mere occurrence of the event. Chief Baron Pollock disagreed, saying that when a man passing in front of the premises of a flour dealer is hit by a falling barrel of flour, it is

> "apparent that the barrel was in the custody of the defendant who occupied the premises, and who is responsible for the acts of his servants who had the controul of it; and in my opinion the fact of its falling is prima facie evidence of negligence, and the plaintiff who was injured

by it is not bound to shew that it could not fall without negligence, but if there are any facts inconsistent with negligence it is for the defendant to prove them." 2 H. & C. at 728.

The comment which was to provide the label for a wide variety of subsequent cases was a characterization of these facts: "There are certain cases of which it may be said res ipsa loquitur, and this seems one of them." 2 H. & C. at 725. The subsequent development of a res ipsa loquitur doctrine is chronicled by attempts to identify those "certain cases" of which it may be said "the thing itself speaks."

In the ensuing years the idea that the circumstances of an injury could sometimes be evidence of negligence filtered across the Atlantic. Some fifty years later it was sufficiently widespread in America for Professor Wigmore to include a discussion in the first edition of his treatise on evidence. 4 *Wigmore on Evidence* § 2509 (1st ed. 1905). This discussion constitutes one of the bases for the doctrine of res ipsa loquitur in Wyoming. Wigmore discussed res ipsa loquitur in terms of shifting to the defendant "the duty of producing evidence."[1] 4 *Wigmore* § 2509 at 3557. The asserted reason for this shift is that defendant has access to evidence of the true cause of the occurrence and plaintiff does not. The logic of this assumption is clearer when considered in the original context. Wigmore was discussing injuries caused by "powerful machinery, harmless in normal operation, but capable of serious human injury if not constructed or managed in a specific mode" and the defendant was assumed to be "the owner or manager of the apparatus." *Id.* at 3556. Thus, those who constructed, operated or maintained an apparatus were assumed to be in the best position to produce evidence regarding the construction, operation and maintenance.

Wigmore proposed three limits on the application of the presumption:

"(1) The apparatus must be such that in the ordinary instance no injurious opera-

tion is to be expected unless from a careless construction, inspection, or user;

"(2) Both inspection and user must have been at the time of the injury in the control of the party charged;

"(3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured." 4 *Wigmore* § 2509, p. 3557.

These three considerations became the framework for Wyoming's res ipsa loquitur doctrine. The seminal Wyoming case is *Stanolind Oil & Gas Co. v. Bunce*, 51 Wyo. 1, 62 P.2d 1297 (1936). Justice Riner authored the majority opinion, which quoted several different expositions of the doctrine. The first was taken from Justice Willis Van Devanter's opinion in *San Juan Light & Transit Co. v. Requena*, 224 U.S. 89, 98, 32 S.Ct. 399, 401, 56 L.Ed. 680 (1912):

"[W]hen a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care."

This language, which is adopted from 2 *Cooley on Torts* § 1424 (3rd ed.1906), is the source of the "exclusive control" language that was combined with Wigmore's three elements to determine the outcome of the *Stanolind* case. The majority found that the defendant did not have "exclusive control" because the plaintiff was using the device in question, a gas water heater, when it exploded.

Justice Blume dissented:

"I am not prepared to hold that a person injured by an apparatus, which he used in the ordinary way with care and for the purpose for which it was intended, can-

---

1. While Wigmore originally used the word "presumption," in Wyoming the effect of applying res ipsa loquitur is to raise a permissible inference rather than a legal presumption. *Stano-*

*lind Oil & Gas Co. v. Bunce*, 51 Wyo. 1, 37, 62 P.2d 1297, 1308 (1936) (Kimball, C.J., concurring).

not, in any case, have the benefit of the rule, on the theory that such use leaves the defendant without exclusive control of user * * *." 51 Wyo. at 39, 62 P.2d at 1309.

Justice Blume took the view that defendant had undertaken to provide hot water by use of the heater and was, therefore, in control of the heater to the extent contemplated by Wigmore. 51 Wyo. at 40, 62 P.2d at 1309. He argued that the "control" element was more important as a means of determining who was in the best position to explain the accident rather than as a strict prerequisite for application of res ipsa loquitur. *Id.* When Wigmore next revised his treatise, he agreed, calling the *Stanolind* case, "the leading one to date" on the subject of res ipsa loquitur, adding that "the qualification noted by Blume, J., as to exceptional modifications of the phrasing of the second above element, should receive acceptance." 9 *Wigmore on Evidence* § 2509, n. 2 at p. 289 (3rd ed.1940). The United States Supreme Court later interpreted the "exclusive control" language from *San Juan Light & Transit* in much the same manner. *Jesionowski v. Boston & M. R.R.*, 329 U.S. 452, 456–57, 67 S.Ct. 401, 403–04, 91 L.Ed. 416, 169 A.L.R. 947 (1947).

This court later explicitly adopted Justice Blume's position in *Rafferty v. Northern Util. Co.*, 73 Wyo. 287, 306–07, 278 P.2d 605, 612 (1955). *Rafferty* involved a warehouse fire caused by gas heaters. Defendant's employee had repaired and adjusted the heaters approximately two hours before a fire broke out. There was no evidence that anyone else had touched the heaters in the interval between the repair and the fire. 73 Wyo. at 296–97, 278 P.2d at 607. Under these circumstances, the

> "evidence warranted the further implied finding that the unit, even though installed in plaintiff's building, still remained within the exclusive control of the defendant by virtue of the qualification of the control requirement as heretofore expressed by this court and as approved by Wigmore." 73 Wyo. at 307–08, 278 P.2d at 612.

The qualified nature of the "exclusive control" language was again based on superior knowledge rather than actual physical control at the exact moment of the injury.

■ This premise was stated more clearly in *Hall v. Cody Gas Co.*, 477 P.2d 585, 586 (Wyo.1970), where we said that:

> "The doctrine of res ipsa loquitur is predicated upon plaintiff's inability to specify the act of negligence which caused his injury; he is therefore permitted to rely on the doctrine as a substitute for specific proof.
>
> *  *  *  *  *  *
>
> " * * * if the circumstances do not show or suggest that defendant should have superior knowledge, or if the plaintiff himself possesses equal or superior means of explaining the occurrence, the rule may not properly be invoked."

Conversely, res ipsa loquitur may properly be invoked when circumstances do show or suggest that defendant has superior knowledge or means of explaining the occurrence.

The circumstances of this case are similar to those in *Rafferty*. In both cases, repair work was performed by defendant on an apparatus which appeared to function normally for a period of time before malfunctioning and causing an injury. In both cases there was no evidence of any tampering or interference with the apparatus between the time of repair and the time of failure. In both cases the defendant was in a superior position to explain what was physically done to the apparatus at the time of repair.

■ Newcastle argues that the truck had been operated for approximately 13 hours before the brake failure, and the successful application of the brakes during that period precludes any inference that the brakes were negligently repaired. The evidence, however, was that the brakes failed on their first application after the truck was loaded, and evidence was presented that the weight of a load would affect the ability of the truck to stop. While we recognize that the potential for intervening factors increases with increas-

ing time and distance, we are unwilling to say in this case that the time between the repair and the failure is so long that it precludes an inference that the two events are related.

We have held that a motion for a directed verdict should be cautiously and sparingly granted because it deprives the parties of a determination of the facts by a jury. *See, e.g., Cody v. Atkins,* 658 P.2d 59, 61 (Wyo.1983). The question presented here is whether it is reasonable to infer negligence in repair when a mechanism fails shortly after it has ostensibly been repaired. In this case res ipsa loquitur applies. A reasonable inference can be drawn from the evidence favorable to the plaintiff that defendant was negligent in repairing the brakes. When we consider that inference together with the evidence in this case, a directed verdict for defendant is precluded.

Reversed and remanded.

THOMAS, J., filed a dissenting opinion.

THOMAS, Justice, dissenting.

I must dissent from the application of the doctrine of *res ipsa loquitur* by the majority in this case. Rather than applying that rule of law, the majority clearly extends it beyond the realm of justification. It is my perception that the majority would permit the jury to presume negligence from the happening of the accident and invoke conjecture as the basis of liability. That approach contravenes a well established principle found in the decisions of this court. *DeWald v. State,* 719 P.2d 643 (Wyo.1986); *Mellor v. Ten Sleep Cattle Company,* 550 P.2d 500 (Wyo.1976); *Apperson v. Kay,* 546 P.2d 995 (Wyo.1976); *Jivelekas v. City of Worland,* 546 P.2d 419 (Wyo.1976); *Elite Cleaners & Tailors, Inc. v. Gentry,* 510 P.2d 784 (Wyo.1973).

The reliance by the majority on *Rafferty v. Northern Utilities Company,* 73 Wyo. 287, 278 P.2d 605 (1955), is misplaced when one recognizes the clear limitation upon the operative facts of that case as described by this language:

"The same may be said in this case, for this plaintiff was shown to have done absolutely nothing to interfere in any way with the functioning of the unit after it was placed in automatic operation by the defendant's employee." *Rafferty,* 73 Wyo. at 308, 278 P.2d at 612.

This quoted language follows immediately after a statement by the court that the plaintiff's conduct had no more legal significance than that of an innocent bystander. The distinction of the facts, and the involvement of the plaintiff, in *Rafferty* from the facts, and the involvement of Goedert, in this case is apparent to any casual reader. Goedert, and not Newcastle Equipment Co., Inc., had exclusive control over the tractor trailer for at least thirteen hours immediately prior to the accident.

The majority also finds support for its holding in the separate opinion of Justice Blume in *Stanolind Oil & Gas Company v. Bunce,* 51 Wyo. 1, 62 P.2d 1297 (1936). My interpretation of Justice Blume's opinion in that case is that he would have invoked a theory of strict liability to justify the reliance by the jury on *res ipsa loquitur* in finding for the plaintiff. However visionary Justice Blume's approach may be perceived, his view is not the law in *Stanolind* and it does not fit Goedert's theory in this case.

In *Stanolind,* the majority adopted the statement of the doctrine of *res ipsa loquitur* from 5 D. Wigmore, *Wigmore on Evidence* § 2509 (2d ed.1923):

" '(1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user; (2) Both inspection and user must have been at the time of the injury in the control of the party charged; (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured.' " *Stanolind,* 51 Wyo. at 21, 62 P.2d at 1301–02.

The majority opinion then held that the circumstances did not fit either the second or third requirements of the rule as stated. The second requirement has been main-

tained in the law of this state up until this decision. *Wood v. Geis Trucking Company,* 639 P.2d 903 (Wyo.1982); *Langdon v. Baldwin–Lima–Hamilton Corporation,* 494 P.2d 537 (Wyo.1972); *Hall v. Cody Gas Company,* 477 P.2d 585 (Wyo.1970); *Sayre v. Allemand,* 418 P.2d 1006 (Wyo.1966); *North Central Gas Company v. Bloem,* 376 P.2d 382 (1962).

I close by noting from the majority opinion that the justification offered by Wigmore for shifting the duty of producing evidence is that the defendant has access to evidence of the true cause of the occurrence and the plaintiff does not. In the majority opinion, it is explained that Wigmore assumed the defendant to be the owner or manager of the apparatus. Later, the majority alludes to the assertion by Justice Blume that the "control" element is more important as a means of determining who was in the best position to explain the accident rather than as a requirement to invoke the doctrine. The utility of these justifications for the doctrine in a situation in which the plaintiff was operating the apparatus at the time of the injury and it was in fact owned by someone other than the defendant somehow escapes me. Goedert had equivalent, if not better, access to evidence of the cause of the occurrence as did Newcastle Equipment Co., Inc. In such an instance, the control requirement should not be overlooked simply to shift to a defendant the burden of proving he was not negligent rather than maintaining the burden of the plaintiff to establish his claim.

I would affirm the order of the district court granting the directed verdict.